```
               UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA

METRA ELECTRONICS CORP.,
a Florida corporation,

     Plaintiff,                          CASE NO.

     v.

AAMP OF FLORIDA, INC., d.b.a.
AAMP OF AMERICA, INC., a
Florida corporation,

     Defendant.
_____/
```

**COMPLAINT FOR DECLARATORY RELIEF OF INVALIDITY OF U.S. PATENT NO. 8,014,540**

Plaintiff, Metra Electronics Corp. (hereinafter "METRA") files this action against Defendant AAMP of Florida, Inc., d.b.a. AAMP of America, Inc. (hereinafter "AAMP"), seeking a declaration of invalidity of AAMP's U.S. Patent No. 8,014,540, and in support thereof states as follows:

THE PARTIES

1. Plaintiff METRA is a Florida corporation having its principal place of business at 460 Walker Street, Holly Hill, Florida.

2. Defendant AAMP is a Florida corporation having its principal place of business at 15500 Lightwave Drive, Suite 202, Clearwater, Florida.

## JURISDICTION AND VENUE

3. This is an action for declaratory judgment under the patent laws of the United States, 35 U.S.C. §§ 1 et seq., and 28 U.S.C. §§ 2201 - 2202.

4. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over AAMP because AAMP resides within the Middle District.

6. Venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. §§ 1391(b)(1) and 1400.

## FACTUAL BACKGROUND

7. The dispute brought before this Court is the latest in an ongoing series of disputes dating back to 2011. METRA will limit the discussion of this lengthy history to events relevant to the issue the Court is being asked to decide - whether AAMP's U.S. Patent No. 8,014,540[1] is invalid.

8. The problem confronted by the inventor of AAMP's U.S. Patent No. 8,014,540 (hereinafter "the '540 Patent") concerned car stereo controls that were placed on the steering wheel. During the 1990's it became common for vehicle manufacturers to place stereo control switches on the steering wheel. The

---

[1] A copy of the patent is attached to this Complaint as Exhibit A.

vehicle manufacturers also placed an external input port on the factory stereo.  The steering wheel switches were hardwired to this external input port.  If the owner removed the factory stereo and replaced it with another type of stereo, the functionality of the steering wheel switches was often lost.

9.   The inventor of the '540 Patent created a solution to this problem.  Many replacement stereos at the time included an infrared detector used to receive wireless (infrared) signals from a handheld remote control supplied with the replacement stereo. The inventor created an interface module that took in hardwired electrical signals from the steering wheel switches and converted these to infrared remote control signals that were then transmitted to the replacement stereo.  The replacement stereo interpreted these infrared signals as commands from its own remote control - and responded accordingly.

10.  The inventor's system of converting hardwired input signals to infrared light output signals was described in a series of patents, starting with Provisional Application 60/108,711.  These filings are described in the following table:



11. The claims granted on the initial filings were consistent with the written description submitted. As an example, the claims of U.S. Pat. No. 6,956,952 and U.S. Pat. No. 7,613,308 required the interface module's output signal to be a wireless signal. This distinction was important, as several previously existing interface modules had connected steering wheel controls to a replacement stereo using a hardwired output connection.

12. In fact, Plaintiff METRA and other competing manufacturers marketed interface modules using a hardwired

4

output connection. These products did not infringe AAMP's patents – which required a wireless output connection.

13. However, on March 9, 2010, AAMP expanded the scope of the claims it sought. During the prosecution of the '540 Patent, AAMP filed new claims that eliminated the prior limitation of the output connection being a wireless signal. Such claims were ultimately granted in the '540 Patent, as well as other AAMP patents.

14. In 2011, AAMP sued Metra in this Court for infringement of the '540 Patent. AAMP later amended its complaint to also allege infringement of U.S. Patent No. 8,184,825 ("the '825 Patent").[2]

15. In October 2012, the parties mediated that prior action. A settlement agreement was reached. That agreement provided that METRA licensed the patents in suit and would pay a royalty on all steering wheel control interfaces. The settlement agreement also provided that disputes concerning the settlement agreement were subject to arbitration. Significantly, the settlement agreement did not restrict METRA from attacking the validity of AAMP's patents.

16. AAMP went on to sue other manufacturers offering interface products with a hardwired output signal.

---

2 The '825 Patent is attached hereto as Exhibit B.

5

17. During the course of this other litigation, METRA became aware of prior art demonstrating that the '540 and '825 Patents were invalid.

18. After becoming aware of the invalidity, METRA invoked its rights under the doctrine announced in *Lear v. Adkins*, 395 U.S. 653, 673-74 (1969). Specifically, METRA declined to make any further royalty payments to AAMP and stated that it was doing so because it believed the '540 and '825 Patents were invalid.

19. METRA also submitted to the U.S. Patent and Trademark Office several requests for *ex parte* reexamination of the '540 and '825 Patents.[3]

20. AAMP asserted that the arbitration clause in the 2012 settlement agreement required any question of patent validity to go to arbitration. METRA disagreed. AAMP then filed a petition in Florida circuit court.[4]

---

3 In an *ex parte* reexamination, any party at any time can submit written materials to the U.S.P.T.O. and suggest that it ought to use these materials to reconsider its prior decision to issue the patent. 35 U.S.C. §302. *Ex parte* reexaminations are restricted to limited grounds, and cannot consider many other grounds for invalidity that are available in this Court. Ultimately the P.T.O. invalidated the '825 Patent in these preliminary proceedings, but not the '540 Patent, and thus a real and present controversy still exists between the parties.
4 AAMP and METRA are both Florida companies. The settlement agreement was signed in Florida. The parties agreed that the settlement agreement is governed by Florida law, but disagreed as to its proper interpretation under Florida law.

21. Eventually, Florida's Fifth District Court of Appeal addressed whether the parties October 2012 settlement agreement required arbitration of the question of whether the '540 patent is invalid. In *Metra Electronics Corp. v. AAMP of Florida, Inc. d/b/a AAMP of America*, 330 So. 3d 1026, 1030 (Fla. 5th DCA 2021), the court held that the question of whether the '540 patent was invalid did not fall within the agreement's arbitration clause. AAMP did not appeal this ruling, which has become final.

22. After the Fifth District's decision, AAMP took no further action until May 2023. It did not demand royalty payments from METRA and METRA did not make them.

23. In May 2023, AAMP filed a renewed petition to compel arbitration in Florida circuit court which seeks to compel METRA to arbitrate the issue of whether METRA must make royalty payments to AAMP. If the one remaining licensed patent is held invalid, then any possible obligation to pay will cease. *Lear v. Adkins*, 395 U.S. 653, 673-74 (1969). Thus, the resolution of the question of the validity of the '540 patent is necessary before any arbitration can be held.[5]

CLAIM FOR RELIEF

---

[5] There are other issues regarding the enforceability of the settlement agreement, but these issues are not before this Court.

(Declaratory Judgment of Invalidity and Unenforceability)

24. AAMP is the owner of record of the '540 Patent.

25. AAMP is now demanding that METRA make royalty payments for use of the '540 Patent.

26. During the course of prosecuting the patents in the chain of the '540 Patent - and specifically during the prosecution of the '540 Patent itself - AAMP expanded the scope of its claims to the extent that they (a) read upon the prior art, and (b) go beyond the written description provided in the specification of the '540 Patent. Other statutory defects are present as well.

27. Claims 1-16 of the '540 Patent are invalid for failing to meet one or more of the requirements of 35 U.S.C. §§ 102, 103, and 112.

28. Accordingly, METRA is entitled to a declaratory judgment that the claims of the '540 Patent are invalid.[6]

WHEREFORE, METRA requests this Court to issue:

(a) a declaration that the claims of the '540 Patent are invalid and unenforceable; and

(b) such other relief as the Court deems proper.

METRA requests a jury trial as to all issues so triable.

---

[6] METRA recognizes the fact that the consideration of this request requires construction of the claims of the '540 Patent and therefore invokes the process set forth in *Markman v. Westview Instruments*, 52 F.3d 967 (Fed.Cir. 1995)

Dated: May 18, 2023

                                        _/s/ John Wiley Horton_____
                                        J. Wiley Horton, Esq.
                                        wiley@penningtonlaw.com
                                        PENNINGTON, P.A.
                                        215 S. Monroe Street, 2nd Floor
                                        Tallahassee, FL   32301
                                        850 222-3533 – office
                                        850 222-2126 – fax
                                        Counsel for Plaintiff
                                        FBN 0059242